**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
CRESCENDO MARITIME CO.,     :
     :
               <u>Petitioner</u>   :      15 Civ. 4481 (JFK)
     :
    -against-        :
     :      **OPINION & ORDER**
BANK OF COMMUNICATIONS CO.   :
LTD.,     :
     :
               <u>Respondent.</u>   :
------------------------------X

<u>APPEARANCES</u>

FOR PETITIONER CRESCENDO MARITIME CO.:
    Oliver K. Beiersdorf, Esq.
    Lonnie Ellis Klein, Esq.
    REED SMITH LLP

FOR RESPONDENT BANK OF COMMUNICATIONS CO. LTD.:
    Lanier Saperstein, Esq.
    David C. Singer, Esq.
    Daniel Warren Beebe, Esq.
    DORSEY & WHITNEY LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Crescendo Maritime Co.'s petition, brought pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to enforce three arbitration awards issued in its favor in London, England, against Respondent Bank of Communications Co. Ltd. ("BOCOM").  BOCOM opposes the petition on three grounds:  lack of personal jurisdiction, <u>forum non conveniens</u>, and on the basis that the arbitration panel exceeded

its authority, in violation of New York Convention Article V(1)(c).  For the reasons set forth below, the Court finds that it has jurisdiction to hear the petition, that forum non conveniens dismissal is not warranted, and that the awards are enforceable under the New York Convention.  Accordingly, Crescendo's petition is granted and the awards are confirmed.

## I. Background

### A. The Parties

Crescendo Maritime Co. is a special purpose vehicle incorporated in the Republic of the Marshall Islands, where it maintains its principal place of business. (Decl. of Angeliki Kalapodi ¶ 6.)  BOCOM is a Chinese bank with its head office in Shanghai, China. (Id.)  It maintains 224 branches in Mainland China, including a branch in Qingdao, China. (See id.; Decl. of Daniel W. Beebe, ECF No. 22, Ex. 3.)  Consistent with Chinese law, BOCOM's Qingdao branch is the same legal entity as the respondent in this action, Bank of Communications Company Ltd. (See Decl. of Yuan Hui, ECF No. 4.)  BOCOM also operates 13 branches outside of China, including one in Manhattan, where it maintains approximately $4.8 billion in assets. (Beebe Decl. Ex. 3; Reply Decl. of Oliver Beiersdorf Ex. A.)

### B. The Shipbuilding Contract

On August 16, 2007, Crescendo, acting as a buyer, entered into a shipbuilding contract with seller Nantong Mingde Heavy

2

Industry Stock Co. Ltd. for the construction of a large bulk carrier vessel ("the Shipbuilding Contract"). (Kalapodi Decl. ¶ 4 & Ex. B.)  Through an addendum entered into the same day as the contract, New Future International Trade Co. Ltd. (together with Nantong, the "Sellers") became a party to the Shipbuilding Contract as a co-seller. (Id. ¶ 4 & Ex. B.)  Although both the Shipbuilding Contract and the addendum were entered into on August 16, 2007, both documents were backdated to December 6, 2006. (Id. ¶ 5 & Ex. B.)  The purchase price for the vessel was $18.6 million plus €9.18 million, the total to be paid out in five installments. (Id. Ex. B).  Crescendo paid three installments of $6.2 million each on September 25, 2007; July 21, 2008; and January 5, 2010. (Id. ¶¶ 8, 10.)  To help pay the installments, Crescendo received financing from Alpha Bank. (Id. ¶ 6.)

Under the Shipbuilding Contract, disputes "arising out of or relating to" the contract were to be referred to arbitration in London, England. (Id. ¶ 6 & Ex. B.)  The contract also provided that the validity and interpretation of the contract was to be governed by English law. (Id. ¶ 6 & Ex. B.)

### C. The Refund Guarantees

On behalf of the Sellers, Respondent BOCOM issued three refund guarantees in Crescendo's favor (the "Refund Guarantees") through its branch in Qingdao, China—one guarantee for each of

3

the installments that Crescendo paid under the Shipbuilding Contract. (Id. ¶ 6. & Ex. E.)  The Refund Guarantees provided that BOCOM would reimburse Crescendo for the installments if they became repayable to Crescendo under the terms of the Shipbuilding Contract and the Sellers failed to pay any refunds owed. (Id. Ex. E.)  Each of the guarantees also contained a choice-of-law and arbitration provision.  Specifically, each guarantee provided that "this Guarantee shall be governed by and construed in accordance with the laws of England and any dispute under this Guarantee shall be referred to arbitration to be held in London, England, the proceedings to be governed by the rules of London Maritime Arbitration Association (LMAA)." (Id. (text capitalized in originals.))

### D. Events Leading to the Arbitrations

Following several delays in the construction of the vessel, Crescendo and the Sellers agreed to a number of extensions to the delivery date. (Id. ¶ 11.)  The parties also agreed to a reduction of the purchase price to $20 million. (Id. Ex. C.)

Despite these modifications, the agreement between the parties broke down.  The Sellers purported to terminate the Shipbuilding Contract on November 29, 2011, the day before the contract was eligible to be cancelled by Crescendo for failure to meet the modified delivery deadline. (Id. ¶ 12.)  The next day, the Sellers notified Crescendo that they had commenced

4

arbitration proceedings in London against Crescendo (the
"Shipbuilding Arbitration"). (Id. ¶ 13.)  In response, Crescendo
wrote to the Sellers on December 1, 2011, cancelling the
Shipbuilding Contract and demanding repayment of the
installments. (Id. ¶ 14.)

After the Sellers' cancellation of the contract, Crescendo
demanded reimbursement from BOCOM under the Refund Guarantees.
(Id. ¶ 16.)  When BOCOM refused to pay, Crescendo commenced
arbitration against BOCOM (the "Refund Arbitration") (Id. ¶ 17 &
Ex. K.)  At arbitration, BOCOM described itself as "Bank of
Communications Qingdao Branch," but at the time there was no
evidence whether it was in fact a separate legal entity from
Bank of Communications. (Beebe Decl. Ex. 1 ¶ 4.)

The Shipbuilding Arbitration and the Refund Arbitration
were heard concurrently by the same panel of three arbitrators:
one appointed by the Sellers and BOCOM, one appointed by
Crescendo, and one appointed by the two other arbitrators
(collectively, "the Tribunal"). (Kalapodi Decl. ¶¶ 13, 15, 17 &
Exs. F-H, K-L.)

### E. Joinder of Alpha Bank

Crescendo obtained financing from Alpha Bank for the
installments paid under the Shipbuilding Contract. (Id. ¶ 6.)
In connection with that financing, Crescendo assigned its rights

5

under the Shipbuilding Contract and the Refund Guarantees to
Alpha Bank by way of security. (Id. ¶ 7 & Ex. D.)

In advance of the Refund Arbitrations, BOCOM argued that by
virtue of the assignment, Crescendo had transferred its right to
sue to Alpha, and therefore only Alpha could raise claims under
the Refund Guarantees. (Id. ¶ 18-20 & Ex. M.)

In light of BOCOM's position, Alpha wrote the Tribunal on
July 17, 2014, applying to join as claimants in the Refund
Arbitration and counter-claimants in the Shipbuilding
Arbitration. (Id. ¶ 20 & Ex. M.)  Alpha maintained that the
right to sue remained vested in Crescendo, but stated that it
would join the arbitrations to enable the Tribunal to issue
awards in the form sought by Crescendo in the event that the
arbitrators found in Crescendo's favor. (Id. Ex. M.)  Alpha
added that it did not wish to take any active role in the
arbitrations. (Id.)

BOCOM refused to weigh in on Alpha Bank's letter, claiming
that it was not required to respond because Alpha Bank was not a
party to the arbitration. (Id. ¶ 21.)  On August 1, 2014,
Crescendo and Alpha served their submissions in support of the
joinder application. (Id. ¶ 23.)  BOCOM again did not respond.
(Id.)  Then, on August 23, 2014, the Tribunal went ahead with
its decision, finding that it had jurisdiction to join Alpha to
the proceedings. (Id. ¶ 23 & Ex. N.)  The next day, BOCOM wrote

to the Tribunal protesting the decision and seeking a halt to the arbitration. (Id. ¶ 24 & Ex. O.)  The Tribunal responded that no party could unilaterally bring a halt to the proceedings, that the arbitrations would proceed, but that that if BOCOM wished, it could continue in the arbitrations without prejudice to any jurisdictional challenge. (Id. ¶ 26 & Ex. Q.)

**F. Collateral Proceedings in China and the United Kingdom**

On August 29, 2014, BOCOM filed an action in the Qingdao Maritime Court in China against Crescendo, Alpha, and the Sellers, alleging maritime fraud based on the backdating of the Shipbuilding Contract. (See ECF No. 39 Ex. 1 ¶ 15; Kalapodi Decl. Ex. S.)  On October 21, 2014, the Chinese court issued a ruling "freezing the principal sum and interest under the Refund Guarantees" and "refraining [sic] [BOCOM] from making any payment" to Crescendo or Alpha. (Beebe Decl. Ex. 7.)

Subsequently, Crescendo and Alpha obtained a preliminary anti-suit injunction against the Chinese court's ruling through the English courts. (ECF No. 39 Ex. 1 ¶ 19.)  The injunction ordered BOCOM not to pursue the proceedings in China because its claims were subject to the ongoing arbitration in London. (Id.)

Following several demands by BOCOM to suspend the arbitration hearing, Crescendo wrote the Tribunal on October 10, 2014, opposing a suspension and noting that BOCOM's request appeared to be "yet another delaying tactic." (Kalapodi Decl.

Ex. R.)  The arbitration panel responded the next day, affirming that the arbitration proceedings would go forward. (Id. Ex. S.)

On October 13, 2014, BOCOM notified the Tribunal that it refused to attend the final hearings or do anything further to participate in the proceedings. (Id.)  The Tribunal responded by urging both BOCOM and the Sellers to take part. (Id. ¶ 26 & Exs. T-U.)

## G. The Arbitration Awards

The arbitration hearing took place November 3, 2014, through November 6, 2014, without the appearance of either BOCOM or the Sellers. (Id. ¶ 27.)

On December 27, 2014, BOCOM informed the Tribunal that the Sellers had entered bankruptcy. (Id. ¶ 31.)

On December 31, 2014, the Tribunal ruled in favor of Crescendo in both the Shipbuilding Arbitration and the Refund Arbitration, finding that the cancellation of the Shipbuilding Contract was valid, that Crescendo was entitled to repayment from the Sellers, and that if the Sellers failed to make payment, BOCOM was obligated to make payment under the Refund Guarantees. (Id. ¶¶ 28-29 & Exs. I-J.)

The Tribunal set forth the basis for its ruling in an 88-page decision. (See Beebe Decl. Ex. 1.)  The Tribunal's findings included that the right to sue under the Refund Guarantees remained vested in Crescendo, not Alpha Bank. (Id.; Kalapodi

Decl. ¶ 30.)   The Tribunal also rejected various defenses raised
by BOCOM, including that the Refund Guarantees were void and
unenforceable for fraudulent misrepresentation or nondisclosure
because BOCOM did not know about the backdating of the
Shipbuilding Contract or the reason that it was backdated. (See
Beebe Decl. Ex. 1 ¶¶ 197-204.)   The arbitrators determined that
it was highly probable BOCOM was aware that the Shipbuilding
Contract was backdated. (Id. ¶ 203.)   In any event, the Tribunal
found that there was no evidence of dishonesty on Crescendo's
part and that BOCOM had failed to establish that any potential
misrepresentation would have been material. (Id. ¶¶ 202, 204.)

    The Tribunal issued a total of four awards in Crescendo's
favor:   one in the Shipbuilding Arbitration and three in the
Refund Arbitration (one for each of the Refund Guarantees).
In the Shipbuilding Arbitration award, the Tribunal principally
ordered the Sellers to make immediate repayment of the $18.6
million paid under the Shipbuilding Contract, along with costs,
accrued interest, and post-award interest. (Kalapodi Decl. ¶ 28
& Ex. I.)   In the three Refund Arbitration awards, the Tribunal
principally ordered that in the event the Sellers failed to make
repayment, BOCOM was required to pay Crescendo $18.6 million
under the Refund Guarantees plus costs and interest. (Id. ¶ 29 &
Ex. J.)

On January 20, 2015, Crescendo demanded payment from the
Sellers pursuant to the Shipbuilding Arbitration award, as well
as payment from BOCOM pursuant to the Refund Arbitration awards.
(Id. ¶¶ 31-32.)  Neither the Sellers nor BOCOM paid. (Id. ¶ 33.)
As a result, Crescendo brought the instant petition on June 9,
2015, to confirm the three Refund Arbitration awards and have
judgment entered in its favor.[1]  On October 9, 2015, BOCOM filed
its opposition to the petition.

## H. Post-Award Proceedings

On November 25, 2015, the High Court of England and Wales,
Queen's Bench Division, issued a "final anti-suit injunction,"
enjoining BOCOM from proceeding with its claims against
Crescendo in the Qingdao Maritime Court in China. (ECF No. 39
Ex. 1.)  In so doing, the High Court found that BOCOM's claims
in the Chinese proceedings are in substance the same as those
properly decided by the arbitrators. (See id. ¶ 50.)

## II. Legal Standard

The New York Convention, as implemented by the Federal
Arbitration Act ("FAA"), empowers the federal courts to enforce
foreign arbitration awards upon the petition of any party to the

---

[1]     The Court initially stayed consideration of the petition pending
resolution of two appeals in the High Court of England and Wales.
Those appeals have since been dismissed, and the parties agree that a
stay is no longer necessary. (See Letter from Lanier Saperstein, Esq.,
ECF No. 30, at 1.)

arbitration within three years of the issuance of the award.
9 U.S.C. §§ 201, 207.  Although not required by the New York
Convention or the FAA, the enforcing court must have
jurisdiction over the respondent's person or property to hear
the petition. Frontera Res. Azerbaijan Corp. v. State Oil Co. of
Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009) ("'Some
basis must be shown, whether arising from the respondent's
residence, his conduct, his consent, the location of his
property or otherwise, to justify his being subject to the
court's power.'" (quoting Glencore Grain Rotterdam B.V. v.
Shivnath Rai Harnarain Co., 284 F.3d 1114, 1122 (9th Cir.
2002))).

    Where jurisdiction is proper, the court's review of the
award is "strictly limited and the showing required to avoid
summary confirmance is high." Compagnie Noga D'Importation et
D'Exportation, S.A. v. Russ. Fed'n, 361 F.3d 676, 683 (2d Cir.
2004) (internal quotation marks omitted).  "The court shall
confirm the award unless it finds one of the grounds for refusal
or deferral of recognition or enforcement of the award specified
in the said Convention." 9 U.S.C. § 207.  The party opposing
enforcement bears the burden of proving that one of the seven
defenses under the New York Convention applies. Encyclopaedia
Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85,
90 (2d Cir. 2005).

### III. Discussion

BOCOM opposes Crescendo's petition on three grounds. First, BOCOM argues that the Court lacks jurisdiction over BOCOM's person or property to enforce the award.  Second, BOCOM contends that, even if the Court has jurisdiction, it should decline to exercise that jurisdiction under the doctrine of forum non conveniens.  Third, BOCOM argues that the awards are unenforceable under the New York Convention because the arbitration panel exceeded its authority, in violation of New York Convention Article V(1)(c).  As explained below, each of these arguments is unavailing.

### A. Jurisdiction

To hear a petition to confirm a foreign arbitration award, a court must have jurisdiction over either the respondent's person or property. Frontera Res. Azerbaijan Corp., 582 F.3d at 398.  Here, BOCOM maintains approximately $4.8 billion in assets at its New York branch. (Beiersdorf Decl. Ex. A.).  The question therefore arises whether the Court's jurisdiction over this property allows it to hear the petition.

BOCOM argues that its assets in New York do not provide an adequate basis for jurisdiction because (1) the assets are unrelated to the underlying arbitration and (2) only assets located at BOCOM's Qingdao branch may be used to satisfy the awards.  The Court disagrees.

12

## 1. <u>Quasi In Rem</u> Jurisdiction

In general, the presence of a defendant's property within a court's jurisdiction is insufficient to allow the court to hear claims against the defendant unrelated to that property. <u>See</u> <u>Shaffer v. Heitner</u>, 433 U.S. 186, 210-12 (1977). Instead, jurisdiction based on property is ordinarily subject to the same "minimum contacts" test that is applied in personal jurisdiction cases. <u>See</u> <u>id.</u>

However, an exception to that general rule applies where a petitioner seeks to recover on a judgment already adjudicated in a forum with personal jurisdiction over the respondent. <u>See</u> <u>id.</u> at 210 n.36. As the Supreme Court explained in <u>Shaffer</u>:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

<u>Id.</u>

Although the <u>Shaffer</u> Court was referring to the enforcement of sister-state judgments under the Full Faith and Credit Clause of the Constitution, the same reasoning applies here. <u>See</u> <u>CME</u> <u>Media Enters. B.V. v. Zelezny</u>, 2001 WL 1035138, at *3-4 (S.D.N.Y. Sept. 10, 2001) (citing <u>Shaffer</u>, 433 U.S. at 210 n.36) (exercising <u>quasi in rem</u> jurisdiction to enforce foreign

arbitration award against respondent's assets within the forum);
see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain
Co., 284 F.3d 1114, 1127-28 (9th Cir. 2002) (citing Shaffer, 433
U.S. at 210 n.36) (recognizing that a foreign arbitration award
could be enforced against the respondent's property within the
forum even if that property had no relationship to the
underlying controversy between the parties).  An arbitration
panel with personal jurisdiction over BOCOM has already
adjudicated the underlying claims and determined that BOCOM is a
debtor of Crescendo; this is merely an action to recover on that
debt.  Accordingly, because BOCOM maintains sufficient assets in
New York to satisfy the awards, the Court has quasi in rem
jurisdiction to hear the petition and enforce the awards.[2]

---

[2]    Crescendo also asserts that the Court has both general and
specific personal jurisdiction over BOCOM.  As BOCOM is not
incorporated in New York and does not maintain its principal place of
business within the state, it appears unlikely that the Court has
general jurisdiction over BOCOM. See Daimler AG v. Bauman, 134 S. Ct.
746, 761-62 (2014).

       Although Crescendo generally avers that there is specific
personal jurisdiction over BOCOM in its petition, it set forth the
alleged basis for that jurisdiction for the first time at oral
argument—specifically, that BOCOM's use of a New York correspondent
bank account in connection with the Refund Guarantees gives rise to
specific jurisdiction. (See Oral Arg. Tr. at 8-11; Supp. Decl. of
Angeliki Kalapodi, ECF No. 41.)  Because BOCOM has not had an
opportunity to fully respond to this argument, and because quasi in
rem jurisdiction provides an independent basis on which to hear the
petition, the Court declines to consider whether it also has specific
jurisdiction.

## 2. Enforceability Against New York Assets

BOCOM advances two additional arguments on the issue of jurisdiction.  First, BOCOM contends that its New York assets may not be used to satisfy the awards—and therefore may not serve as a basis for jurisdiction—because the awards were issued against its branch in Qingdao, China, not its New York branch. Next, BOCOM argues that jurisdiction is precluded under New York's "separate entity rule."  These arguments are unavailing.

At arbitration, the panel allowed BOCOM to proceed as "Bank of Communications Qingdao Branch" while acknowledging that no determination had been made as to whether BOCOM's Qingdao branch was a separate legal entity. (See Beebe Decl. Ex. 1 ¶ 4). Crescendo has since established—without contrary evidence produced by BOCOM—that BOCOM's Qingdao branch and its New York branch are part of the same legal entity:  the respondent in this action, Bank of Communications Co. Ltd. (See Hui Decl. ¶¶ 1-9.)  Thus, the mere fact that BOCOM chose to identify itself as "Bank of Communications Qingdao Branch" when appearing at arbitration does not allow BOCOM to shield itself from enforcement against its New York assets.

BOCOM's reliance on New York's common-law "separate entity rule" is also misplaced because it misconstrues the context in which that rule applies.  As the New York Court of Appeals recently explained:

> The separate entity rule . . . provides that
> even when a bank garnishee with a New York
> branch is subject to personal jurisdiction,
> its other branches are to be treated as
> separate entities for certain purposes,
> particularly with respect to . . . prejudgment
> attachments and . . . postjudgment restraining
> notices and turnover orders.

Motorola Credit Corp. v. Standard Chartered Bank, 24 N.Y.3d 149,

158 (2014).

In arguing that the separate entity rule precludes

jurisdiction in this case, BOCOM fails to recognize that the

rule applies where the bank is acting as a garnishee—in other

words, where the bank holds assets on behalf of a customer, and

a creditor of the customer seeks to attach those assets. See

id.; see also, e.g., Allied Mar., Inc. v. Descatrade SA, 620

F.3d 70, 74 (2d Cir. 2010).  That is not the situation here.

Rather, BOCOM itself is the party liable under the arbitration

awards, and Crescendo seeks to recover against BOCOM's own

corporate assets.  As a result, the separate entity rule does

not apply.[3]

---

[3]     Relying on the separate entity rule, BOCOM also asserts in a
footnote in its opposition brief that Crescendo did not properly serve
BOCOM with the petition because service was made on BOCOM's New York
branch rather than its Qingdao branch.  As both branches are part of the
same legal entity and the separate entity does not apply in this
context, service upon BOCOM's New York branch was effective. See
9 U.S.C. § 9.

### B. <u>Forum Non Conveniens</u>

Having concluded that there is jurisdiction to hear the petition, the Court next considers whether, as BOCOM suggests, the Court should decline to exercise its jurisdiction under the doctrine of <u>forum non conveniens</u>.

"A federal court has discretion to dismiss a case on the ground of <u>forum non conveniens</u> when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 429, (2007) (alterations omitted).

Although a district court has broad discretion in determining whether to dismiss an action on <u>forum non conveniens</u> grounds, the Second Circuit has set forth a three-step process to guide the exercise of that discretion. <u>See</u> <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendant[] is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public

interests implicated in the choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri, 274 F.3d at 73-74).

## 1. Level of Deference

"Any review of a forum non conveniens motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" Id. at 154 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). Nevertheless, the degree of deference given to a plaintiff's choice of forum is measured on a "sliding scale" based on a totality of the circumstances. Iragorri, 274 F.3d at 71. As the Second Circuit has explained:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

Id. at 71-72.

Factors that indicate convenience and therefore weigh in favor of more deference to the plaintiff's choice of forum include "the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." Id. at 72.  On the other hand, a plaintiff's choice of forum will receive less deference when it appears that its choice is motivated by an attempt "to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." Id.

Here, considering the totality of the circumstances, Crescendo's choice of forum is entitled to deference.  First, because this is a summary proceeding to confirm an arbitration award, there is little tactical advantage for Crescendo to gain through local laws, the habitual generosity of juries in the forum, or the inconvenience and expense to BOCOM resulting from litigation in New York. See id.  Unlike actions that may proceed to trial or require extensive access to witnesses or discovery,

this dispute was decided in arbitration and all that remains is the relatively narrow issue of confirmation.  That issue has been fully briefed and argued, and both parties are represented by capable New York counsel.

Further, Crescendo's choice of forum appears to be based on genuine considerations of convenience.  Although Crescendo is not based in the United States, there is no other forum that would be clearly more convenient from Crescendo's perspective. BOCOM does not operate a branch in the Republic of the Marshall Islands, where Crescendo is incorporated, or the United Kingdom, where the arbitration was held and the awards were issued. (See Beebe Decl. Ex. 3.)  Thus, it appears that BOCOM would not be amenable to suit in those forums.  In contrast, as explained above, BOCOM is amenable to suit in New York because it maintains a branch in Manhattan with sufficient assets to satisfy the awards.  Further, although the events at issue in the underlying arbitration took place outside the United States, that consideration has less significance here because the facts underlying the dispute are not directly at issue in this proceeding.

Accordingly, the Court finds that Crescendo's choice of forum is entitled to deference.

## 2. Adequate Alternative Forum

The Court next considers whether China, the alternative forum proposed by BOCOM, would be adequate to adjudicate the dispute.  "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'" <u>Norex Petroleum</u>, 416 F.3d at 157 (quoting <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 75 (2d Cir. 2003)).  Here, BOCOM is amenable to service of process in China, where its head office is located, and Chinese courts appear to have subject matter jurisdiction to enforce the awards because China is signatory to the New York Convention. (<u>See</u> Declaration of Randall Peerenboom, ECF. No 29, ¶¶ 18-19.)  Therefore, China is an adequate alternative forum.

## 3. Private and Public Interests

At the final step of a <u>forum non conveniens</u> analysis, the court considers two sets of factors to determine whether the action should be decided in the plaintiff's chosen forum or in the alternative forum proposed by the defendant. <u>See</u> <u>Iragorri</u>, 274 F.3d at 73-74.  The first set of factors—dubbed "private interest factors"—relate to the convenience of the litigants and include "'[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing,

witnesses; [3] possibility of view of premises, if view would be
appropriate to the action; and [4] all other practical problems
that make trial of a case easy, expeditious and inexpensive.'"
Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508
(1947)).

The second set of factors—called "public interest factors"—
include "(1) administrative difficulties associated with court
congestion; (2) the unfairness of imposing jury duty on a
community with no relation to the litigation; (3) the 'local
interest in having localized controversies decided at home'; and
(4) avoiding difficult problems in conflict of laws and the
application of foreign law." DiRienzo v. Philip Servs. Corp.,
294 F.3d 21, 31 (2d Cir. 2002) (quoting Gilbert 330 U.S. at 508-
09).

With respect to the private interests, as discussed above,
the summary nature of this proceeding significantly mitigates
the burden on BOCOM of litigating in New York.  The petition has
been fully briefed and argued by both sides and, as a result,
the usual difficulties associated with conducting discovery or
trial abroad are not implicated in this case.

The public interest factors also weigh against dismissal.
As a summary action, this case contributes only mildly to court
congestion and imposes no burden on the local community in
connection with jury duty.

Furthermore, although BOCOM argues that China is a more appropriate forum because BOCOM is pursuing related fraud claims against Crescendo in the Qingdao Maritime Court, the Court disagrees. "[J]ust as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of _forum non conveniens_ not because of genuine concern with convenience but because of similar forum-shopping reasons." _Iragorri_, 274 F.3d at 75. That concern exists in significant measure here. Having raised its fraud allegations at arbitration and lost, BOCOM chose to proceed with an action in China in what appears to be an effort to obtain a contrary decision through a collateral attack. As a result, it is not unreasonable to infer that BOCOM's preference for China as an alternative forum is motivated by tactical reasons rather than genuine concerns of convenience.[4]

For these reasons, the Court finds that dismissal on _forum non conveniens_ grounds is unwarranted.

### C. Defenses Under the New York Convention

Under the New York Convention, upon petition by a party to a foreign arbitration award, the court "'shall confirm'" the award unless the party opposing enforcement demonstrates that

---

[4]    In any event, the status of BOCOM's action against Crescendo in China is in doubt. The High Court of England and Wales recently issued a permanent anti-suit injunction against BOCOM's claims against Crescendo in the Qingdao Maritime Court, finding that they are "vexatious and oppressive." (ECF No. 39 Ex. 1 ¶ 50.)

one of the seven defenses set forth in the New York Convention applies. Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009) (quoting 9 U.S.C. § 207).

Article V(1)(c) of the New York Convention provides that enforcement may be refused when "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." See New York Convention, Art. V(1)(c) (as implemented by 9 U.S.C. § 201). This defense is "'construed narrowly.'" Phx. Bulk Carriers, Ltd. v. Am. Metals Trading, LLP, No. 10 CIV. 2963 NRB, 2013 WL 5863608, at *7 (S.D.N.Y. Oct. 31, 2013) (quoting Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 976 (2d Cir. 1974)).

Here, BOCOM argues that the Tribunal exceeded its power under the Refund Guarantee arbitration clauses, in violation of New York Convention Article V(1)(c), by (1) allowing Alpha Bank to join in the arbitrations and (2) considering and rejecting BOCOM's argument that the Refund Guarantees were unenforceable due to fraud or nondisclosure by Crescendo. The Court disagrees.

### 1. Joinder of Alpha Bank

As an initial matter, BOCOM fails to demonstrate that the Tribunal erred in allowing Alpha Bank to join the arbitrations.

24

Under the Refund Guarantee arbitration clauses, the parties
submitted to arbitration under the rules of the London Maritime
Arbitration Association, (see Kalapodi Decl. Ex. E.), and there
is no evidence that Alpha's joinder violated those or any other
procedural rules.

In any event, BOCOM has not established that Alpha's
joinder in any way caused the awards to "contain[] decisions on
matters beyond the scope of the submission to arbitration." New
York Convention Art. V(1)(c).  Alpha appears to have played
little or no active role in the proceedings, and the awards
require BOCOM to pay Crescendo, not Alpha.  As a result, the
Court finds that Alpha's joinder does not render the awards
unenforceable under the New York Convention.

## 2. Consideration of Alleged Fraud

Turning to BOCOM's assertion that the arbitrators lacked
the authority to address BOCOM's allegations of fraud against
Crescendo, the Court must first determine what law governs the
scope of the agreement to arbitrate.  Here, the Refund
Guarantees each contain an English choice of law provision
providing that the Guarantees "shall be governed by and
construed in accordance with the laws of England." (Kalapodi
Decl Ex. E. (text capitalized in originals)).  Thus, the scope
of the agreement to arbitrate is governed by English law. See
Martinez v. Bloomberg LP, 740 F.3d 211, 224 (2d Cir. 2014)

25

("[Q]uestions about the meaning and scope of a forum selection clause . . . are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause.")

As the Second Circuit has recognized, under English law courts presume that an arbitration clause applies to all disputes arising out of the contractual relationship between the parties "'unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction.'" Martinez, 740 F.3d at 224-25 (quoting Fiona Trust & Holding Corp. v. Privalov, [2007] UKHL 40, [13]).  For example, in Fiona Trust & Holding Corp., the House of Lords considered the scope of a contractual clause referring "any dispute arising under this charter" to arbitration. [2007] UKHL 40, [3-4].  The Court found that under that clause, the issue of whether the contract was procured by bribery was properly submitted to arbitration, noting that the provision "contains nothing to exclude disputes about the validity of the contract, whether on the grounds that it was procured by fraud, bribery, misrepresentation, or anything else." Id. at [13-15].

Likewise, here, the Refund Guarantees each contain a clause referring "any dispute under this Guarantee" to arbitration. (Kalapodi Decl. Ex. E.)  The clause provides no exclusion for questions of fraud or misrepresentation.  Thus, under English law, the arbitrators acted within their authority by considering

26

and rejecting BOCOM's argument that the Refund Guarantees were void and unenforceable by reason of fraud or misrepresentation.

Accordingly, BOCOM has failed to meet its burden of establishing that any of the defenses under the New York Convention preclude enforcement.

### Conclusion

For the foregoing reasons, the petition to confirm the awards is granted.  The Clerk of the Court is respectfully directed to enter judgment in Petitioner's favor and close this case.

**SO ORDERED.**

Dated:    New York, New York
          February 22, 2016

                                    _John F. Keenan_____
                                         John F. Keenan
                                    United States District Judge